IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CT-3045-FL

| | |
|---|---|
| DAVID RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| OFFICER BOSTICK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

This case comes before the court on the motion (D.E. 90) by plaintiff David Richardson ("plaintiff") for default judgment against defendants Captain Beck, Sergeant Bell, and Officer Bostick pursuant to Fed. R. Civ. P. 55. The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 19 March 2013 Order (D.E. 98)). For the reasons set forth below, it will be recommended that the motion be denied without prejudice.

## BACKGROUND

On 7 March 2011, plaintiff filed a complaint (D.E. 3) ("complaint" or "original complaint") asserting claims under 42 U.S.C. § 1983 ("§ 1983") arising out of a series of three assaults against him on 21 March 2008 while he was an inmate at Maury Correctional Institution in Maury, North Carolina. (*See generally* Compl. ¶¶ 1, 6-20). The complaint named as defendants six officers of the North Carolina Department of Correction:[1] Officer Anderson, Officer Beamon, Captain Beck, Sergeant Bell, Officer Bostick, and Officer Wheeler. (*Id.* 1; ¶¶ 1, 5). Plaintiff alleged that Bell, Bostick, and Wheeler struck him and that the other officers

---

[1] Effective 1 January 2012, the State of North Carolina reorganized and consolidated a number of executive agencies, and the Department of Correction is now the Division of Adult Correction, a unit of the Department of Public Safety. *See* N.C. Gen. Stat. § 143B-600(a)(1).

were present and took no action to stop the assaults and, in certain instances, otherwise facilitated them. (*Id.* ¶¶ 7-16). Plaintiff asserted joint and several liability of defendants, alleging specifically that "[t]hroughout the abuse of Plaintiff . . . , the Defendants acted in concert with one another, in mutual support and agreement for the deprivation of Plaintiff's rights under the Constitution of the United States and the Constitution and laws of North Carolina." (*Id.* ¶¶ 20, 25).

Each of the defendants was served with the complaint (*see* Affs. of Service (D.E. 13-16, 34, 35)), but only Anderson,[2] Beamon, and Wheeler filed answers (D.E. 30, 31, 36). On 21 February 2012, upon motion of plaintiff, the Clerk made entries of default against Beck (D.E. 58), Bell (D.E. 59), and Bostick (D.E. 60). On 8 June 2012, Beamon was dismissed from the action pursuant to a settlement with plaintiff. (*See* Dismissal Order (D.E. 65)).

On 14 August 2012, plaintiff filed an amended complaint (D.E. 70). The principal changes from the original complaint were to add two defendants, Officer Matthew Scott Lennon and Assistant Superintendent Harold Person (Am. Compl., *e.g.*, 1; ¶¶ 4 (p. 3), 23), and allegations about a group of officers, the Good Ol' Boys, who allegedly assaulted black inmates on a regular basis (*id.* ¶¶ 20-42). Officer Lennon, who was allegedly a member of the Good Ol' Boys, purportedly witnessed the assaults on plaintiff without taking action to stop them. (*Id.* ¶¶ 6, 10, 12). Person allegedly supervised Beck, Bell, and Bostick; was aware that they, Wheeler, Lennon, and others were members of the Good Ol' Boys; and received reports of the assaults on plaintiff and other assaults by the Good Ol' Boys before and after the assaults on plaintiff, but did nothing to stop them. (*Id.* ¶¶ 21, 23-44). The amended complaint also includes additional details about events alleged in the original complaint. (*Id.* ¶¶ 2 (p. 2), 4 (p. 3), 14, 49).

---

[2] Anderson's answer included crossclaims against each of the other defendants.

2

The amended complaint asserts no new causes of action. Thus, it asserts against all defendants materially the same claims alleged in the original complaint (*compare* Compl. ¶¶ 22-25 *with* Am. Compl. ¶¶ 46-50) and again expressly alleges joint and several liability of all defendants (Am. Compl ¶ 50).

On 16 August 2012, Anderson was dismissed pursuant to a settlement with plaintiff. (*See* Dismissal Order (D.E. 71)). Lennon and Person subsequently answered the amended complaint. (*See* D.E. 82, 85). The other remaining defendants, Beck, Bell, Bostick, and Wheeler, have not.[3]

On 3 December 2012, the Clerk issued a notice (D.E. 86) to plaintiff directing him to take steps by 24 December 2012 under Fed. R. Civ. P. 55(b) to reduce the entries of default against Beck, Bell, and Bostick on the original complaint to judgment. In response, plaintiff filed the instant motion on 18 December 2012 for entry of default judgment against them.

## **DISCUSSION**

A threshold issue presented by plaintiff's motion is whether the court can appropriately proceed with entry of a default judgment against the defaulting defendants, Beck, Bell, and Bostick, while the case proceeds as to the other three, non-defaulting defendants, Lennon, Person, and Wheeler. The seminal case addressing this issue is *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552 (1872). In *Frow*, the Supreme Court held that where the plaintiff alleges the joint liability of the defendants, to avoid inconsistent judgments, the appropriate course is to enter a default against the defaulting defendants and reserve the entry of default judgment until after the case has proceeded as to the answering defendants. *Id.* at 554; *see also Colleton Preparatory*

---

[3] Fed. R. Civ. P. 5(a)(2) requires that a party who is in default for failing to appear be served with an amended pleading and that such service be under Fed. R. Civ. P. 4 when the amended pleading asserts a new claim for relief against the party. Because the amended complaint asserts no new claims for relief against Beck, Bell, or Bostick, plaintiff was not required under Rule 5(a)(2) to serve it on them. Plaintiff nevertheless did serve them, albeit by mail, not under Rule 4. (*See* Am. Compl. (cert. of serv.) 14).

*Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."); 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2690 ("As a general rule . . . , when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted."). Further, the Fourth Circuit has expanded the application of *Frow* beyond cases of joint liability to cases in which liability of multiple defendants is joint and several. *United States ex rel. Hudson v. Peerless Ins. Co.,* 374 F.2d 942, 944 (4th Cir. 1967) ("Although *Frow* was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar and applicable not only to situations of joint liability but to those where the liability is joint and/or several."); *see also RBC Bank (USA) v. Epps,* No. 4:11-cv-00124-RBH, 2012 WL 3308227, at * 2, (D.S.C. 13 Aug. 2012) ("Because of Rule 54(b), the Fourth Circuit ultimately held that the reasoning behind *Frow,* which applied to cases involving joint liability, is also applicable in cases involving joint and several liability." (citing *Peerless,* 374 F. 2d at 944)).

The *Frow* Court observed that in cases of joint liability "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Frow*, 82 U.S. at 554. The *Frow* Court illustrated the incongruity that can result if default judgment is entered prematurely: "[T]here might be one decree of the court sustaining the charge of joint fraud committed by the defendants, and another decree disaffirming the said charge, declaring it to be entirely unfounded and dismissing the complainant's bill." *Id*. The courts recognize specifically that where a defaulting defendant would have a defense to the complaint in common with a non-defaulting defendant, default

judgment should not be entered until the non-defaulting defendant has had an opportunity to pursue that defense to its end. *See Peerless,* 374 F.2d at 944 ("'Where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant . . . .'" (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 55.06, at 1821 (2d ed. 1965))).

The court finds that the principles established in *Frow* are fully applicable in the instant case. Plaintiff expressly alleges in the original complaint (as well as the amended complaint) that the liability of defendants is joint and several.[4] And the allegations are consistent with joint and several liability. *See, e.g.*, *Barnard v. Piedmont Reg'l Jail Auth.*, No. 3:07CV566, 2009 WL 2872510, at *5 (E.D. Va. 3 Sept. 2009) (providing in judgment to plaintiff inmate on an excessive force claim under § 1983 that defendant correction officers who participated in the assault of plaintiff were jointly and severally liable for his injuries); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 315 (7th Cir. 2010) ("[L]iability among defendants in a § 1983 case is *joint* and several–at least in the usual case of one plaintiff with a single indivisible injury." (citing *Watts v. Laurent*, 774 F.2d 168, 180 (7th Cir. 1985) (holding that a § 1983 action in which plaintiff sought recovery for injuries sustained when he was attacked by a fellow inmate was "a classic case for imposing joint and several liability" against the attacking inmate as well as the guards who failed to protect plaintiff from the attack)). Moreover, the defaulting defendants could have potential defenses in common with the non-defaulting defendants, including failure of the injuries to be of sufficient seriousness to be actionable under § 1983 and

---

[4] At this point, any default judgment against Beck, Bell, and Bostick would necessarily be based on the original complaint because they have not been served with the amended complaint under Rule 4 and the entries of default against them relate to the original complaint. *See, e.g., Jindal v. Stanley Capital Mortgage Co.*, No. 1:10cv1142 (LO/TRJ), 2012 WL 6962090, at *2 n.1 (E.D. Va. 20 Dec. 2012) (rep. & recommendation by mag. judge) (holding that default judgment would be entered as to plaintiff's first amended complaint and not the second amended complaint because the latter was not served on the defaulting defendant), *adopted*, 2013 WL 352371 (28 Jan. 2013). Nonetheless, as indicated, the amended complaint also alleges joint and several liability, and asserts the same claims against Beck, Bell, and Bostick as the original complaint.

5

qualified immunity based on failure to violate any clearly established constitutional rights of which a reasonable person would have known, as already invoked by at least one non-defaulting defendant. (*See* Wheeler Ans. (D.E. 30) 6). Such defenses, if successful, would inure to the benefit of the defaulting defendants. *See Peerless,* 374 F. 2d at 944; *see also Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding that former corrections officials who had defaulted in inmate's § 1983 action were entitled to benefit from summary judgment entered in favor of non-defaulting defendants).

The court concludes that entry of default judgment against the defaulting defendants at this point in the proceedings would present the risk of inconsistent judgments *Frow* sought to avoid and would therefore be premature before the liability of the non-defaulting defendants has been determined. It will accordingly be recommended that plaintiff's motion for default judgment against Beck, Bell, and Bostick be denied without prejudice to plaintiff's renewal of the motion after the liability of Lennon, Person, and Wheeler has been determined. *See Vick v. Wong*, 263 F.R.D. 325, 333 (E.D. Va. 2009) (denying without prejudice plaintiff's motion for default judgment against two defaulting defendants until resolution of the suit against a third defendant on the merits).

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 90) for default judgment be DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 22 May 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and

Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed due no later than 14 days from service of the objections.

SO ORDERED, this the 8th day of May 2013.

_____
James E. Gates
United States Magistrate Judge