IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3045-FL

| | |
|---|---|
| DAVID RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| F/N/U BOSTICK, F/N/U BELL, F/N/U ) | |
| WHEELER, F/N/U BEAMON, F/N/U ) | |
| ANDERSON, F/N/U BECK, HAROLD ) | |
| PERSON, and MATTHEW SCOTT ) | |
| LENNON, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the motion to dismiss, or for summary judgment (DE 100), filed by defendant Matthew Scott Lennon ("Lennon"), to which plaintiff responded. Also before the court are plaintiff's respective unopposed motions to dismiss defendants Superintendent Harold Person ("Person") (DE 107) and Brian Bostick ("Bostick") (DE 112). In this posture, the issues raised are ripe for adjudication. For the reasons that follow, the court denies Lennon's motion, but grants plaintiff's motions.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate, acting through counsel North Carolina Prisoner Legal Services, filed on March 7, 2011, this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Captain Beck ("Beck"), Sergeant Bell ("Bell"), Officer Bostick, Officer Anderson ("Anderson"), Officer Beamon ("Beamon"), and Officer Wheeler ("Wheeler") used excessive force against him in violation of the Eighth Amendment to the United States Constitution. Each of the defendants was served with the

complaint, but only Anderson, Beamon, and Wheeler filed answers. On February 21, 2012, plaintiff moved for entry of default against Beck, Bell, and Bostick. The Clerk of Court granted the motions for entry of default.

On June 8, 2012, Beamon was dismissed from this action pursuant to a settlement with plaintiff. Plaintiff subsequently amended his complaint on August 14, 2012, to include Lennon, a correctional officer, and Person as defendants in the action. Then, on August 16, 2012, the court granted plaintiff's August 14, 2012, motion to voluntarily dismiss defendant Anderson with prejudice.

On April 4, 2013, Lennon filed a motion for summary judgment arguing that plaintiff's action against him is time-barred. Alternatively, Lennon argues that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. Plaintiff subsequently filed two separate motions seeking dismissal of his claims against defendants Person and Bostick. Wheeler did not respond to plaintiff's amended complaint.

## STATEMENT OF FACTS

This action arose of out events that occurred on the grey unit at Maury Correctional Institution ("Maury") on March 21, 2008, while plaintiff was an inmate housed on the grey unit, and Lennon was a correctional officer who recently was assigned to the grey unit.[1] Lennon Aff. ¶ 2. On this date, plaintiff's cell opened unexpectedly while defendant Lennon was returning another inmate Derrick Johnson ("inmate Johnson") to inmate Johnson's cell following recreation. Id. Ex. 2, p. 3. Plaintiff then exited his cell and engaged in a confrontation with inmate Johnson. Id. In the course of his confrontation with Johnson, plaintiff struck a nearby officer, Officer Price, in the face three

---

[1] Defendant Lennon began his employment at Maury in June 2007. Lennon Aff. ¶ 2.

2

times. Lennon Aff. ¶ 7; Ex. 2, p. 3. Plaintiff then struck defendant Lennon in the side, causing injury to Lennon's ribs. Id. ¶ 7. Lennon responded by calling for back-up. Id. ¶ 9. In the interim, a nurse working in the area left and got Officer Tammy McCotter ("McCotter"), who went to the scene and restrained plaintiff. Id. ¶ 10.

Defendant Beck then arrived at the scene and instructed defendant Lennon and Officer Price to write their statements regarding the incident. Id. ¶ 11. Before doing so, Lennon states that he went to the Red Unit Medical Room to be screened for injuries to his rib area which was red, tender, and swollen. Id. ¶ 12. The nurse gave Lennon two Tylenol for his injuries, and Lennon then went to a conference room to write his statement. Id. ¶ 13. Although this fact is disputed, Lennon states that he remained in the conference room for "an hour or two." Id. ¶ 13.

McCotter then went to the conference room where she waited with defendant Lennon. Pl.'s Ex. F, p. 2. While in the conference room, McCotter heard defendant Beck tell defendant Bostick to "take care" of plaintiff. Id. McCotter saw Bostick "flex up," and heard Beck tell Bostick to get defendant Wheeler to assist him. Id.

Defendant Wheeler and defendant Bostick then went to plaintiff's cell and escorted him to the medical unit. Lennon's Mem. Ex. 2, p. 4. On the way to the medical unit, Bostick grabbed plaintiff by the throat and started choking him. Id. Bostick also slammed plaintiff's head against the wall and threw him to the ground. Id. At the medical unit, Bostick threatened plaintiff by stating: "Wait until I put black beauty on you." Id. As Bostick and Wheeler were returning plaintiff to his cell, they stopped in the middle of A and D Block hallway, and Bostick started hitting plaintiff's head, legs, shoulders, and back with his baton. Id. p. 5.

3

Defendant Wheeler and defendant Bell then placed plaintiff in cell B3, but they did not remove plaintiff's restraints. Id. Defendant Bell and defendant Bostick threw plaintiff on the floor of the cell and Bostick continued to beat plaintiff with his baton. Id. According to McCotter, defendants Anderson, Wheeler, Beamon, and Lennon stood outside of plaintiff's cell and watched the alleged assault. Pl.'s Ex. F p. 3. McCotter states that, after the alleged assault, defendant Bostick and defendant Bell were laughing, defendant Beamon vomited, defendant Lennon stated that he was about to vomit, and McCotter began to cry. Id.

Later that day, McCotter and defendant Wheeler went to plaintiff's cell to check on him. Id. Plaintiff was lying in a fetal position with his eyes rolled back. Id. Plaintiff had lacerations behind both ears, the bottom of his lip was torn, he had a deep cut over his right eye, the bottoms of his shins were busted, and his face was bloody. Id. p. 4. Additionally, there was blood on the wall, door, sink, toilet, bed, and floor of plaintiff's cell. Id. Plaintiff was transported to the hospital for treatment of his injuries.

**DISCUSSION**

A.  Plaintiff's Motions to Dismiss

Plaintiff seeks to voluntarily dismiss his action against defendants Person and Bostick with prejudice. An action may be dismissed voluntarily by the plaintiff without order of the court by filing a notice of dismissal at any time before service by the adverse party of an answer or a motion for summary judgment. See Fed. R.Civ. P. 41(a)(1). Otherwise an action shall not be dismissed on the plaintiff's request except upon an order of the court. See Fed. R.Civ. P. 41(a)(2).

Because defendants in this action have filed an answer, plaintiff's action may only be voluntarily dismissed pursuant to Rule 41(a)(2), which permits voluntary dismissal "upon such terms

4

and conditions that the court deems proper." A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendants. Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). The court does not find substantial prejudice in this case. Therefore, for good cause shown, plaintiff's motions to dismiss Person and Bostick are GRANTED, and the action against these defendants is DISMISSED with prejudice.

B.  Defendant Lennon's Motion for Summary Judgment

  1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

  2.  Analysis

   a.  Statute of Limitations

Defendant Lennon argues that plaintiff's claim against him is barred by the statute of limitations. Although there is no federal statute of limitations for claims brought under 42 U.S.C. § 1983, the relevant state statute of limitations governing personal injury claims should be applied. See Wallace v. Kato, 549 U.S. 384, 387 (2007). The appropriate statute of limitations for personal

5

injury claims in North Carolina is found in N.C. Gen. Stat. § 1-52(5), which establishes a three-year period of limitations. See National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991).

Although the statute of limitations period for claims brought pursuant to § 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. See, e.g., Wallace, 549 U.S. at 388; Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See, e.g., Wallace, 549 U.S. at 391; Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995).

Plaintiff asserts that defendant Lennon is subject to bystander liability because he failed to intervene in the alleged assault on March 21, 2008. Lennon argues that plaintiff's action against him is time-barred because plaintiff did not move to amend his complaint to include Lennon as a defendant until June 14, 2012, which was after the expiration of the statute of limitations. Lennon further argues that plaintiff should not be able to circumvent the statute of limitations because plaintiff knew whether Lennon participated in the alleged incident on the date plaintiff filed his action, and plaintiff made the fully informed decision not to pursue a claim against Lennon. In response, plaintiff states that he was not aware of Lennon's complicity in his assault until after plaintiff received the full North Carolina State Bureau of Investigation ("SBI") report containing McCotter's statement that Lennon watched the alleged assault and did not intervene. Pl's Resp. Ex. F, p. 3. The court finds that the parties have presented a genuine issue of material fact with regard to when plaintiff discovered his claim against Lennon. See Wilmink v. Kanawha County Bd. of Educ., 214 F. App'x 294 (4th Cir. Jan. 17, 2007) ("Under the discovery rule, [], a statute of limitations is tolled until a claimant knows or should know that he has been injured and who is responsible.") (internal quotation omitted); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983) (finding that a cause of action does not accrue until plaintiff exercising

6

due diligence should have discovered factual basis for claim), cert. denied, 464 U.S. 916 (1983). Therefore, the court DENIES Lennon's motion for summary judgment on this ground.

        b.        Eighth Amendment Claim

Under the theory of bystander liability, an officer may be liable only if such officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002). "The number of officers present and able to intervene to save an innocent person from unconstitutional summary punishment inflicted by a fellow officer, in no way correlates with any one officer's duty to intercede. Each [] officer present has an independent duty to act." Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994); O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2nd Cir. 1988) (observing that an officer who stands by and does not seek to assist the victim could be "tacit collaborator").

In the case at hand, defendant Lennon presented an affidavit in which he states that he was not present during the assault because he was in the red unit medical room having his injuries assessed by a nurse or in the conference room writing his statement at the time the alleged assault occurred. Lennon Aff. ¶¶ 12-14. However, other than this affidavit, Lennon does not provide any evidentiary support as to his location within the prison during the alleged assault. Further, as stated, plaintiff has submitted a SBI report containing a statement from McCotter stating that defendant Lennon watched the alleged assault and did not intervene. Pl.'s Resp., Ex. F, p. 3. The evidence presented by plaintiff contradicts the allegations set forth by Lennon in his affidavit. Based upon the foregoing, there is a genuine issue of material fact with regard to whether Lennon was present at the alleged assault.

7

Lennon next argues that even if he was present during the alleged assault, the evidence reflects that he could not have intervened because he had multiple injured ribs due to his earlier altercation with plaintiff.  See Lennon Aff. ¶¶ 7, 12.  However, the only evidence of plaintiff's alleged rib injury is his own self-serving affidavit stating that he suffered rib injuries during the assault.  This does not conclusively prove that Lennon was not capable of intervening or preventing the harm in light of the evidence which suggests that he was present during the assault and did not intervene.  Rather, a jury could infer that Lennon was an idle bystander to the alleged assault in retaliation for the fact that plaintiff had previously assaulted Lennon.  Accordingly, the court finds that there are genuine issues of material fact that are best left for a jury to decide.  See Smith v. Ray, 409 F. App'x 641, 646 (4th Cir. 2011); see also Herrera v. City of New Brunswick, No. 04-3002, 2008 WL 305275, at *10 (D.N.J. Feb. 1, 2008) ("Whether [an officer] had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless considering all the evidence, a reasonable jury could not possibly conclude otherwise." (citing Anderson v. Branen, 17 F.3d 552, 557 (2nd Cir. 1994)).  Accordingly, Lennon's motion for summary judgment is DENIED as to this claim.

    C.    Defendant Wheeler

In light of the court's rulings, the only remaining defendants in this case are defendant Lennon and defendant Wheeler.  The docket in this action indicates that Wheeler was served with plaintiff's original complaint on September 1, 2011, and plaintiff's amended complaint on August 14, 2012.  Wheeler answered plaintiff's original complaint, but did not respond to the amended complaint.  The docket further reflects that subsequent mail to Wheeler has been returned undeliverable.  See (DE 111).  Plaintiff is directed to inform the court how he seeks to proceed

8

against Wheeler. If plaintiff fails to respond to this court's order as to this issue within fourteen (14) days of receipt of this notice, the court will dismiss plaintiff's action against Wheeler without prejudice for failure to prosecute.

D. Joint Report

In addition to any response with respect to defendant Wheeler, in order to facilitate the just and speedy resolution of this action, see Fed. R. Civ. P. 1 & 16, the court sets the following deadlines for conference activities and for the submission of a joint status report and proposed plan. The remaining parties in this case are directed to participate in a conference in aid of trial planning. The parties are responsible for arranging the conference and for attempting in good faith to agree on a proposed plan. The report and plan shall be filed with the court within fourteen (14) days of this court's order. The following must be considered at the conference and included in the report and plan:

1. Whether the parties request additional discovery. If discovery is requested, the report and plan must include a proposed discovery deadline;

2. This case does not properly fall within a category of case automatically to be selected for mediation pursuant to Local Civil Rule 101.1a(b). However, the report and plan must include a deadline for the completion of alternative dispute resolution;

3. The anticipated length of trial;

4. Suggested alternative trial dates or ranges of dates which would be acceptable for trial;

5. Any scheduling issue affecting counsel or the parties. The report affords the opportunity to announce compelling personal or professional considerations, as appropriate, which may affect the scheduling or course of proceedings.

If the parties have made a good faith attempt to confer and submit a joint discovery plan, but have been unable to do so, the parties shall file separate plans within the allotted time period, each

9

of which must include the parties' respective positions and information as would be included in a joint report.

## CONCLUSION

In summary, defendant Lennon's motion to dismiss, or for summary judgment, (DE 100) is DENIED. Plaintiff's motions to dismiss (DE 107, 112) are GRANTED, and defendant Person and defendant Bostick are DISMISSED from this action with prejudice. The parties' joint report and plan shall be filed with the court within fourteen (14) days of this court's order, and plaintiff has fourteen (14) days to respond to the court's order concerning defendant Wheeler.

SO ORDERED, this the 26th day of November, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge