IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3045-FL

| | |
|---|---|
| DAVID RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BRIAN BOSTICK, TERRY BELL, ) | |
| BRIAN WHEELER, DAVID BEAMON, ) | |
| JOHN ANDERSON, GREGORY BECK, ) | |
| HAROLD PERSON, and MATTHEW ) | |
| SCOTT LENNON,[1] ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on plaintiff's unopposed motion for default judgment (DE 131). United States Magistrate Judge Robert B. Jones, Jr. conducted an evidentiary hearing in this action on March 31, 2014. On April 30, 2014, the magistrate judge issued a memorandum and recommendation ("M&R"), pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), wherein he recommends that the court grant plaintiff's motion and award plaintiff compensatory and punitive damages against defendants Gregory Beck ("Beck"), Terry Bell ("Bell"), and Brian Wheeler ("Wheeler"). No objections to the M&R have been filed, and the time within which to make any objection has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, grants

---

[1] The parties have provided the court with their full names as reflected in the caption of this order. The Clerk of Court is DIRECTED to amend the court's docket to reflect such change.

plaintiff's motion for default, and awards plaintiff compensatory damages in the amount of ten thousand dollars ($10,000.00), jointly and severally, as to Beck, Bell, and Wheeler, and punitive damages of ten thousand dollars ($10,000.00) each from Beck and Bell and two thousand dollars ($2,000.00) from Wheeler, for total damages of thirty-two thousand dollars ($32,000.00).

**STATEMENT OF THE CASE**

On March 6, 2011, plaintiff, a state inmate, filed this action, through counsel North Carolina Prisoner Legal Services ("NCPLS") pursuant to 42 U.S.C. § 1983, against defendants Beck, Bell, and Wheeler, as well as Officer Anderson ("Anderson"), Officer Beamon ("Beamon"), and Officer Bostick ("Bostick"). (Compl. (DE 3).) Plaintiff alleged that Bell, Bostick, and Wheeler used excessive force against him on three separate occasions at Maury Correctional Institution ("Maury") on March 21, 2008, in violation of the Eighth Amendment to the United States Constitution. (Id. ¶¶ 8-16.) Plaintiff also alleged that Anderson, Beamon, and Beck were present during the alleged excessive force, failed to take action to stop the alleged excessive force, and otherwise facilitated the alleged use of force. (Id. ¶¶ 13, 15, 20.) Plaintiff alleged defendants are jointly and severally liable. (¶¶ 20, 25.)

Each of the defendants was served with the complaint, but only Anderson, Beamon, and Wheeler filed answers. (DE 30, 31, 36). Plaintiff subsequently moved for entry of default against Beck, Bell, and Bostick. (DE 51, 56, 57.) The Clerk of Court granted the motions for entry of default. (DE 58, 59, 60.) Then, on June 8, 2012, Beamon was dismissed from this action pursuant to a settlement with plaintiff. (DE 65.)

On August 14, 2012, plaintiff filed an amended complaint to include Officer Matthew Scott Lennon ("Lennon") and Superintendent Harold Person ("Person") as defendants in the action.

2

(DE 70.) The amended complaint asserted no new causes of action, but did provide supplemental allegations including allegations about a group of officers, "the Good Ol' Boys," who allegedly assaulted black inmates on a regular basis. (Id. ¶¶ 20-42.) As set forth in the amended complaint, Lennon was a member of the Good Ol' Boys and failed to intervene in the assaults on plaintiff. (¶¶ 6, 10, 12.) Plaintiff also alleged a supervisor liability claim against Person arising out of the March 21, 2008, assaults. (¶¶ 21, 23.) Plaintiff again alleged joint and several liability. (Id. ¶ 50.)

On August 16, 2012, the court entered an order granting plaintiff's August 14, 2012, motion to dismiss defendant Anderson from this action with prejudice due to the fact that the parties had entered into a settlement agreement. (DE 71.) Lennon and Person subsequently answered the amended complaint, but the remaining defendants, Beck, Bell, Bostick, and Wheeler, did not. (DE 82, 85.)

On December 3, 2012, the Clerk of Court issued a notice to plaintiff directing him to take steps by December 24, 2012, under Federal Rule of Civil Procedure 55(b) to reduce the entries of default against Beck, Bell, and Bostick on the original complaint to judgment. (DE 86.) On December 18, 2012, plaintiff moved for default judgment against Beck, Bell, and Bostick. The court then referred the matter to United States Magistrate Judge James E. Gates. On May 9, 2013, the magistrate judge issued an M&R recommending that the motion for default judgment be denied without prejudice. (DE 106.)

In the interim, on April 4, 2013, Lennon filed a motion to dismiss, or in the alternative, for summary judgment, which was fully briefed. (DE 100.) Plaintiff subsequently filed two separate motions seeking dismissal of his claims against defendants Person and Bostick with prejudice pursuant to a settlement. (DE 107, 112.) On November 26, 2013, the court entered an order denying

3

Case 5:11-ct-03045-FL Document 144 Filed 07/14/14 Page 3 of 12

Lennon's motion, but granting plaintiff's motions to dismiss Person and Bostick. (DE 113.) Regarding Wheeler, the court noted that although Wheeler answered plaintiff's original complaint, Wheeler did not respond to plaintiff's amended complaint. The court further noted that mail sent to Wheeler subsequent to the filing of the amended complaint had been returned undeliverable. (Id.) Accordingly, the court directed plaintiff to inform it how plaintiff wanted to proceed against Wheeler. (Id.)

In response to the court's November 26, 2013, order, plaintiff filed a motion for entry of default judgment against Wheeler on December 1, 2013. (DE 114.) The Clerk made entry of default against Wheeler on the amended complaint on January 21, 2014. (DE 120.)

On February 19, 2014, the magistrate judge participated in a court-hosted settlement conference between plaintiff and Lennon, which produced a settlement agreement. (DE 125.) On February 27, 2014, the Clerk issued plaintiff a notice to reduce plaintiff's action against Beck, Bell, and Wheeler to judgment in accordance with Federal Rule of Civil Procedure 55(b). (DE 128.) In response, plaintiff filed the instant motion for default judgment against Bell, Beck, and Wheeler. (DE 131.) Plaintiff's motion was referred to the magistrate judge for an evidentiary hearing and M&R on March 10, 2014. The magistrate judge conducted the hearing on March 31, 2014, and issued his M&R on April 30, 2014. (DE 138, 142.)

**STATEMENT OF FACTS**

The magistrate judge summarized the relevant facts, as developed at hearing through plaintiff's testimony and the introduction of his medical records, as follows:

> The undersigned held a hearing on March 31, 2014. At the hearing, Plaintiff was the only witness. Plaintiff introduced one exhibit which included his relevant medical records. Pl.'s Ex. A. As developed at the hearing, this action arose out of events that occurred at Maury on

4

March 21, 2008, while Plaintiff was an inmate housed in the grey unit. Plaintiff described the grey unit as a maximum security unit on lock-down 24 hours each day, with one inmate to a cell, and protocol requiring an inmate be in full restraints whenever outside his cell.[2] In his testimony, Plaintiff also described a group of correctional officers assigned to the grey unit, consisting of officers and supervisors, who were primarily white and assaulted non-white inmates in the unit.[3] Plaintiff testified that the officers who assaulted him were members of this group. Additionally, Plaintiff testified that Beck and Bell held supervisory roles within the prison and outranked the other correctional officers like Bostick and Wheeler. As Captain, Beck was the highest ranking officer on the grey unit and was referred to as the Officer-in-Charge.

On March 21, 2008, Plaintiffs cell door opened unexpectedly while Plaintiff was lying on his bed reading a book completely unrestrained.[4] Plaintiff knew of previous instances where officers would "pop open" an inmate's cell door and three to four officers "run in [the] cell" to fight the inmate. Plaintiff did not know what was happening when his cell door opened so he went into "attack mode." Plaintiff exited his cell and attacked Officer Price who was escorting another Maury inmate, Derrick Johnson, presumably back from the recreation unit. Plaintiff also attacked inmate Johnson. Officer Price and other officers tried to pull Plaintiff off of inmate Johnson. Plaintiff finally relented, submitted to handcuffs, and was returned to his cell uninjured.

Sometime thereafter, Wheeler came to Plaintiffs cell door and told Plaintiff that he was going to be rewarded for "getting" inmate Johnson. Wheeler later returned to Plaintiffs cell and told Plaintiff he was being taken to the medical unit. Wheeler proceeded to place Plaintiff in handcuffs and when his cell door opened, Plaintiff saw Bostick for the first time standing outside his cell. The two officers

---

[2] Plaintiff described full restraints as handcuffs, ankle shackles and a waist chain, with the handcuffs secured to the waist chain.

[3] All officers were white except for Bell, whom Plaintiff described as "Indian."

[4] Plaintiff described the cell door opening as unusual since inmates on the grey unit had to be in handcuffs prior to officers opening the cell door. The standard practice is for officers to open the smaller trap door located on the cell door, for the inmate to position his hands through the trap door opening for officers to secure handcuffs, and then for the full cell door to open so the officers could enter the cell to secure the inmate in full restraints.

5

placed Plaintiff in full restraints and escorted Plaintiff out of his cell. They walked Plaintiff to an area in the block hallway not monitored by surveillance cameras. Beck was standing in the hallway and asked Bostick "is that the inmate?", referring to Plaintiff, to which Bostick nodded in the affirmative. Beck then shook his head at Bostick, which Plaintiff described as a signal for Bostick to begin assaulting Plaintiff. Bostick grabbed Plaintiff by the neck and choked him, slammed his head to the wall several times and then threw Plaintiff to the ground and began kicking him repeatedly. Plaintiff called Bostick a coward which prompted Bostick to kick Plaintiff in the mouth and call him a "n****r," all while laughing. The other officers, including Wheeler, stood by watching Bostick assault Plaintiff. No officer intervened or otherwise attempted to stop the altercation. The assault occurred within view of a number of inmates who began yelling and kicking on their doors for the officers to stop. Afterwards, Wheeler picked Plaintiff up and escorted him to the medical unit.

Plaintiff testified his mouth was split open and bleeding. Plaintiff told the medical unit nurse that he had been assaulted by the officers, but Bostick, Beck, and Wheeler said aloud in front of the nurse that they did not see anyone assault Plaintiff. Plaintiff stated that Wheeler turned red in the face and looked scared when Beck asked Wheeler, somewhat facetiously, whether he saw an officer assault Plaintiff. While in the medical unit, Bostick directed further verbal threats at Plaintiff with Wheeler and Beck watching nearby. Specifically, Bostick held his metal baton, which he referred to as "Black Beauty," and repeatedly tapped it against the palm of his hand while claiming he would use it on Plaintiff. Bostick also taunted Plaintiff saying "I told you I would get you," referring to an earlier incident between Plaintiff and Bostick when Plaintiff first arrived at Maury. Beck left the medical unit while Plaintiff was still being treated by the nurse.

The officers placed Plaintiff in a holding cell, or "cage" as described by Plaintiff, once they left the medical unit. While in the "cage," Plaintiff testified that Beck asked Plaintiff why he assaulted his officer, referring to Officer Price from the earlier incident that day. While Plaintiff was in the "cage," Bostick instructed officers to throw away all of Plaintiffs belongings in his cell. Bostick returned, accompanied by Bell, to the "cage" to retrieve Plaintiff. The officers began to walk Plaintiff back to the grey unit, but rather than return Plaintiff to his cell, they walked him to another area that was unmonitored by surveillance cameras. Here, Bostick proceeded to assault Plaintiff for a second time, using his metal baton to repeatedly

6

strike Plaintiff on all parts of his body while Plaintiff was still in full restraints and on the ground. Plaintiff testified that Bell was standing next to Bostick and may have kicked Plaintiff, although Plaintiff cannot say with certainty. Plaintiff does not know if Beck was present in the surrounding area during this assault. Inmates in nearby recreation cages saw Plaintiff being assaulted and began to make noise. Next, Plaintiff was taken to an empty cell in B Block. Plaintiff was bleeding and lying on the floor unable to stand up. Bell and Bostick both began beating Plaintiff, for a third time, with their batons while Plaintiff was on the ground and in full restraints. Bell and Bostick left Plaintiff in the cell after they finished beating Plaintiff.

Officer McCotter located Plaintiff in the cell, lying on the floor, and retrieved a nurse to assist transporting Plaintiff in a wheelchair back to the medical unit. The medical unit staff evaluated Plaintiff and advised that Plaintiff be sent to the hospital, but Plaintiff refused to go because the same officers responsible for assaulting him, or their associates, would be responsible for transporting him to the hospital. Plaintiff feared being beaten a fourth time while being transported to the hospital. Plaintiff waited until the shift change when Captain Edwards came on duty to replace Beck and then consented to being transported to the hospital for treatment.

Plaintiff presented to Pitt County Memorial Hospital at approximately 10:00 p.m. on March 21, 2008. Pl.'s Ex. A at 1. The emergency department treatment notes document the following as to Plaintiffs condition: abrasions and small lacerations to the lip, ears, and shoulders; swollen upper lip; redness to upper back; multiple puncture type wounds to the frontal area of bilateral shins; swelling to right ankle and right clavicle; abrasions to bilateral ankles; gauze dressing affixed to bilateral legs and ear. Id. Plaintiff was administered percocet for his pain, which he rated at a level of 8 to 10, and underwent several X-rays. Id. at 1, 3-5. Medical staff cleaned the blood and scrapes on Plaintiffs body. The lacerations on Plaintiffs ear and lower legs were approximately one centimeter in length. Id. at 5-6. Plaintiff received a total of four staples to close the lacerations on his legs and 2 stitches on his ear. Id. at 5-6. Plaintiff returned to Maury and was placed back into his unit on March 22, 2008. Id. at 9, 11. Plaintiff was given a percocet prescription to continue once
he left the hospital, but was administered ibuprofen at Maury. Id. at 14. Plaintiff had his staples and stitches removed on April 3, 2008. Id. at 12. At this date, Plaintiff was still experiencing pain and his

7

ankles and wrists remained swollen from where the cuffs had pressed into his skin during the assault. Plaintiff testified he continues to experience pain in his lower back region which he attributes to the assaults.

Following the assaults, Plaintiff periodically treated with a psychiatrist. Plaintiff testified he experiences anxiety while around correctional officers and has fearful thoughts about the assaults and being in a helpless situation. Plaintiff sometimes experiences break-out sweats where his heart rate is elevated. Plaintiff testified the assaults against him have changed him and prevent him from trusting people and officers. According to Plaintiff, the psychiatrist tried to place him on medication to manage his psychological symptoms, but Plaintiff refused the medication because he believes it is a crutch. Plaintiff has not produced and the court does not have any medical records which chronicle Plaintiffs mental health treatment.

Beck and Bell were both criminally charged and convicted in Greene County, North Carolina, for felony conspiracy under N.C. Gen. Stat. § 14-2.4(A) (conspiracy to commit a felony) for the events that transpired in connection with Plaintiff. Each received a suspended sentence of 36 months supervised probation.

## DISCUSSION

A.  Standard of Review

Once default has been entered under Rule 55(a) of the Federal Rules of Civil Procedure, Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. Upon default, the well-pleaded facts alleged in the complaint, as to liability, are deemed admitted. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir.2001). However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)). Rather, the court must consider whether the unchallenged facts support the relief sought. Id.

8

If the court determines that liability is established, it then must determine the appropriate amount of damages. Unlike allegations of fact, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.1999). The court must make an independent determination regarding such allegations by, for example, conducting an evidentiary hearing or referring the matter to a magistrate judge to conduct such a hearing. Fed. R. Civ. P. 55(b)(2)(B).

Having referred the matter to a magistrate judge, the court must then review de novo those portions of a magistrate judge's M & R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir .1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M & R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir.2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B.  Analysis

The magistrate judge began his analysis in this case by determining whether plaintiff established an Eighth Amendment claim against Beck, Bell, and Wheeler. The Eighth Amendment to the United States Constitution "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996); see Iko v. Shreve, 535 F.3d

9

225, 238 (4th Cir.2008) (internal quotation marks omitted). "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, 77 F.3d at 761.

The objective component of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7(1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir.1994), abrogated by, Wilkins v. Gaddy, 559 U.S. 34 (2010),[5] held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman, 25 F.3d at 1263.

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). Although "[a]n express intent to inflict unnecessary pain is not required" to establish an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering. Id. at 319. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the

---

[5] The court applies Norman because this incident occurred prior to the Court's ruling in Wilkins. See Hill v. Crum, 727 F.3d 312 (2013) (holding that while "Wilkins abrogated Norman in 2010, Wilkins can only be applied prospectively in the context of a qualified immunity analysis."). Under either standard, plaintiff has amply demonstrated a serious injury.

10

threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7.

Upon a review of the evidence presented at the March 31, 2014, hearing, the magistrate judge concluded that plaintiff provided sufficient evidence to satisfy both prongs of the Eighth Amendment test with respect to his claims asserted against defendants Bell, Beck, and Wheeler. Neither Bell, Beck, or Wheeler objected to the magistrate judge's findings. The court agrees with the magistrate judge's analysis and adopts his findings and recommendations in full.

After finding that plaintiff provided sufficient evidence to establish an Eighth Amendment claim, the magistrate judge turned to the issue of damages. Consistent with Supreme Court precedent, the magistrate judge viewed damages pursuant to § 1983 according to principles derived from the common law of torts, seeking to arrive at a figure that would compensate plaintiff's actual losses and, if necessary, deter and/or punish a malicious deprivation of plaintiff's rights. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305-07 (1986). The magistrate judge recommends that plaintiff be awarded compensatory damages in the amount of ten thousand dollars ($10,000.00), jointly and severally, as to Beck, Bell, and Wheeler, and punitive damages of ten thousand ($10,000.00) each from Beck and Bell and two thousand ($2,000.00) from Wheeler, for total damages of thirty-two thousand dollars ($32,000.00). Neither Beck, Bell, or Wheeler objected to the magistrate judge's determination as to damages. The court finds no error in the magistrate's recommendation as to damages, and adopts the magistrate judge's recommendation in full.

11

## CONCLUSION

In summary, upon careful review of the M&R to which no objection has been made, as well as a review of the relevant case law, pleadings, and motions, the court ADOPTS the findings and recommendations of the magistrate judge in full (DE 142), and GRANTS plaintiff's motion for default judgment (DE 131), and awards plaintiff compensatory damages in the amount of ten thousand dollars ($10,000.00), jointly and severally, as to Beck, Bell, and Wheeler, and punitive damages of ten thousand ($10,000.00) each from Beck and Bell, and two thousand ($2,000.00) from Wheeler, for total damages of thirty-two thousand dollars ($32,000.00). The Clerk is DIRECTED to enter judgment for plaintiff in these amounts. The Clerk also is DIRECTED to amend the court's docket to reflect the name changes set forth in footnote one. Upon entry of judgment in accordance with the foregoing, the clerk is DIRECTED to close this case.

SO ORDERED, this the 11th day of July, 2014.

*/s/ Louise W. Flanagan*
_____
LOUISE W. FLANAGAN
United States District Judge